**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | |
|---|---|
| ROBERT VALENZUELA, | |
| Plaintiff, | |
| v. | Case No. 8:19-cv-02181-JSM-CPT |
| AXIOM ACQUISITION VENTURES, LLC, | |
| Defendant. | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT AXIOM ACQUISITION VENTURES, LLC'S MOTION FOR SUMMARY JUDGMENT**

NOW comes ROBERT VALENZUELA ("Plaintiff"), by and through his attorneys, Sulaiman Law Group, Ltd., responding to AXIOM ACQUISITION VENTURES, LLC'S ("Defendant") Motion for Summary Judgment ("Defendant's Motion") and in support thereof states as follows:

I.     **INTRODUCTION:**

Defendant's Motion asserts that it is entitled to summary judgment in its favor in connection with Plaintiff's claims under the Fair Debt Collection Practices Act ("FDCPA"). Defendant's Motion is premised entirely on its suggestion that Plaintiff cannot set forth any *evidence* to support his claims, and further relies on case law that is not analogous to Plaintiff's case in order to illustrate that it is entitled to judgment in its favor in connection with Plaintiff's claims. However, it is difficult to fathom how Plaintiff, a consumer, can obtain such evidence without being afforded access to complete discovery. As of the date of the filing of this response, Plaintiff has not had the opportunity to take the deposition of Defendant's Fed. R. Civ. 30(b)(6)

1

witness, or the deposition of Grassy Sprain, LLC ("Grassy Sprain"), the entity who owns the subject debt and is directly involved in Plaintiff's claims through its relationship with Defendant.

Moreover, Defendant has prematurely filed its Motion without curing outstanding deficiencies in its written discovery responses.  Even after the parties met and conferred, Defendant has refused to cure these deficiencies. Consequently, Plaintiff also needs additional time to proceed with a motion to compel discovery responses.

Plaintiff's purported failure as outlined in Defendant's Motion is due directly to the incomplete nature of discovery in this matter. Courts have noted the extent to which the evidence Defendant accuses Plaintiff of lacking is *precisely* the type of evidence that a Plaintiff would be expected to glean through deposition testimony and written discovery. *See Cowan v. J.C. Penney Co.*, 790 F.2d 1529, 1530 (11th Cir. 1986). The importance of the evidence only gatherable through deposition testimony and written discovery, in combination with the premature timing of Defendant's Motion, illustrate that Plaintiff should be granted the opportunity to depose relevant witnesses and complete written discovery prior to addressing Defendant's Motion.

Therefore, Plaintiff opposes Defendant's Motion pursuant to Fed. R. Civ. P 56(d), and requests that the Court defer considering Defendant's Motion until such time as Plaintiff takes the deposition of relevant witnesses and after the discovery dispute between Plaintiff and Defendant is resolved.

## II.    ARGUMENT

### a.  Fed. R. Civ. P. 56(d)

Pursuant to Fed. R. Civ. P. 56(d), "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to

take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d). Courts describe this rule as providing a device for litigants to avoid summary judgment when the non-movant needs to discover affirmative evidence necessary to oppose the motion. *See Snook v. Trust Co. of Georgia Bank, N.A.,* 859 F.2d 865, 870-71 (11th Cir. 1988). If a party opposing summary judgment demonstrates a need for further discovery in order to obtain facts essential to justify the party's opposition, the trial court may deny the motion for summary judgment or continue the hearing to allow for such discovery. *See Cowan v. J.C. Penney Co.*, 790 F.2d 1529, 1530 (11th Cir. 1986). In making a Rule 56(d) motion, a party opposing summary judgment "bears the responsibility of bringing to the trial court's attention any outstanding discovery in the cause." *Id.*

  **b. Plaintiff Needs Further Discovery To Obtain Facts Essential To Justify His Opposition To Defendant's Motion**

On July 22, 2019, Defendant, a debt collector, mailed a letter to Plaintiff, in which Defendant, in part, informed Plaintiff that a consumer debt ("subject debt") purportedly owed by Plaintiff was sold to Grassy Sprain Group, LLC ("Grassy Sprain"). *See* Exhibit A for a true and correct copy of Defendant's July 22, 2019 correspondence. In the heading of this correspondence, Defendant addressed Plaintiff as an "obligor" in bold font, and within the body of the letter, Defendant stated that the amount allegedly owed by Plaintiff consists of principal, interest, and fees. Immediately after stating that the amount purportedly owed by Plaintiff includes principal, interest, and fees, Defendant's letter articulated that the transfer of the subject debt to Grassy Sprain "does not change the terms and conditions of the prior agreement." When read together, the two aforementioned statements clearly communicated to Plaintiff that interest and fees could continue to accrue. Defendant's letter also told Plaintiff that "effectively immediately, please remit future payments and send correspondences to: Grassy Sprain." Based on the contents and structure of Defendant's July 22nd letter, Defendant objectively acted like a third-party debt collector for

3

Grassy Sprain, as it deemed Plaintiff to be an obligor, owing a balance of $12,484.59, and advised Plaintiff to remit payments to Grassy Sprain. Yet, Defendant failed to disclose itself as a debt collector, which is required by 15 U.S.C § 1692e. Furthermore, Defendant failed to comply with 15 U.S.C. § 1692g in its July 22nd letter.

Consequently, on August 29, 2019, Plaintiff filed his Complaint against Defendant alleging violations of the FDCPA. [Dkt. 1]. Plaintiff alleged that Defendant violated the FDCPA by failing to disclose itself as a debt collector in it July 22nd letter. *Id.* at 4-5. Plaintiff also alleged that Defendant violated the FDCPA by failing to comply with 15 U.S.C. § 1692g. *Id.* at 5. Thereafter, on September 25, 2019, Defendant filed its Answer. [Dkt. 9]. In its answer, Defendant denied liability under the FDCPA, but Defendant admitted that it acts as a debt collector as defined by the FDCPA. *Id.* at 3.

On October 17, 2019, this Honorable Court entered a Case Management and Scheduling Order ("Scheduling Order") [Dkt. 13]. Per the Scheduling Order, discovery in this matter is scheduled to close by October 1, 2020. *Id.* at 1. On October 25, 2019, Plaintiff's counsel issued initial disclosures, interrogatories, requests for admissions and requests to produce to Defendant. Defendant delivered written responses to Plaintiff's discovery requests by November 20, 2019.

Defendant's limited discovery production revealed that on August 21, 2019, Defendant mailed a *second* letter to Plaintiff.  *See* Exhibit B for a true and accurate copy of Defendant's August 21, 2019 correspondence.  This second letter was identical to the July 22, 2019 letter referenced in Plaintiff's Complaint. Defendant's August 21st letter further indicates that Defendant was acting as a debt collector for Grassy Sprain and not just merely informing Plaintiff that the subject debt was assigned to Grassy Sprain, as there would be no reason for Defendant, a self-

proclaimed debt collector, to send an identical letter two times in just over one month, if its ultimate goal was not to extract payment from Plaintiff.

Even still, there are numerous discovery deficiencies with Defendant's responses. Among other improper objections, Defendant primarily refused to respond to several of Plaintiff's discovery requests by unilaterally stating and concluding that it never attempted to collect from Plaintiff. Accordingly, on December 13, 2019, the parties conferred regarding these discovery deficiencies. These deficiencies created an inherent barrier in the discovery process, as rather than immediately proceeding with its next step in discovery – taking the deposition of the necessary parties – Plaintiff was instead forced to divert time and attention in attempting to remedy the deficiencies in Defendant's discovery responses. It would make little sense to proceed with depositions when Defendant refused to comply with several of Plaintiff's written discovery requests. As such, any perceived dilatory aspects to Plaintiff's actions in proceeding through discovery were the direct cause of Defendant's deficient responses and the time such deficiencies caused to be diverted from Plaintiff's pursuit of discovery.

Rather than curing its deficient discovery responses and allowing the parties to uncover necessary discovery, Defendant filed its Motion for Summary Judgment on January 13, 2020, even though over nine months remained before the close of discovery. [Dkt. 14]. Defendant's Motion is premised entirely on Defendant's self-serving assertion that it did not attempt to collect from Plaintiff. *Id.* at 2. In order for Plaintiff's FDCPA case to survive, "two threshold criteria must be met. First, the defendant must qualify as a 'debt collector,' which the FDCPA defines as any person who 'uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts' or who 'regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.' *Gburek v. Litton*

5

*Loan Servicing LP*, 614 F.3d 380, 384 (7th Cir. 2010). "Second, the communication by the debt collector that forms the basis of the suit must have been made 'in connection with the collection of any debt.'" *Id.* There is no bright-line rule for determining whether a communication from a debt collector was made in connection with the collection of any debt. *Id.* "A court must analyze the nature of the parties' relationship, the presence or absence of a demand for payment, and the purpose and context of the communications." *Id.* at 395. "Whether a communication was sent 'in connection with' an attempt to collect a debt is a question of objective fact, to be proven like any other fact." *Ruth v. Triumph P'Ships,* 577 F.3d 790, 798 (7th Cir. 2009).

As mentioned above, Defendant admitted that it is a debt collector as defined by the FDCPA. [Dkt. 9 at 3]. However, Defendant contends that the "letter at issue was not sent 'in connection with the collection of any debt[.]'" [Dkt. 14 at 2]. In asking this Honorable Court for summary judgment, Defendant has attempted to place an unduly high burden on Plaintiff to meet the summary judgment standard, when Defendant's Motion only advances arguments relevant for a motion to dismiss. *See Id.* at 3-5. Given Defendant's admission that a second identical letter was sent just a month after its first correspondence to Plaintiff warrants additional discovery. Again, if Defendant was not attempting to collect upon a debt, then there would be absolutely no reason for Defendant to send a subsequent letter, mere weeks apart, if extracting payment was not Defendant's end goal. As Defendant already admitted, it is a self-proclaimed debt collector, but it is apparent that Defendant is simply employing this tactic of re-sending the same "informative," but coercive letters, in an effort to skirt around FDCPA liability, but at the same time, harass Plaintiff into making a payment. As discussed below, the cases cited by Defendant are not analogous to Plaintiff's matter and were decided at the motion to dismiss stage. Consequently, Defendant is attempting to wrongfully dismiss Plaintiff's meritorious case through procedural

6

tactics intended to prevent Plaintiff from obtaining relevant information through discovery and placing an unduly high burden that Plaintiff cannot reasonably meet at this juncture.

The first case Defendant cites is *Parker v. Midland Credit Mgmt.*, 874 F. Supp. 2d 1353 (S.D. Fla. 2012). In *Parker*, a debt collector sent a correspondence that solely informed the recipient that a debt was purchased by a debt buyer. *Id.* at 1354. The consumer in *Parker* argued that the debt collector violated the FDCPA by failing to include certain disclosures required by the FDCPA. *Id.* Nevertheless, the Court held against the consumer in *Parker* because a letter "that merely informs a debtor of the assignment of a debt" does not constitute a communication in connection with the collection of a debt. *Id.* at 1358.

The second case Defendant relies on is *Maximiliano v. Portfolio Recovery Assocs. LLC*, 2017 U.S. Dist. LEXIS 214698 (S.D. Fla. 2017). In *Maximiliano*, a debt collector sent a similar letter as the one in *Parker*, informing a debtor of the assignment of a debt. *Maximiliano*, 2017 U.S. Dist. LEXIS 214698 at 11-12. However, as required by 15 U.S.C. § 1692g, the debt collector in *Maximiliano* also included language informing the consumer that the debt would be presumed valid after 30 days from receipt of the letter. *Id.* at 12. The Court held that the inclusion of the aforementioned notice was not enough to classify the correspondence as a communication in connection with the collection of a debt. *Id.*

Defendant's Motion attempts to analogize *Parker* and *Maximiliano* to the instant matter by purporting that it sent its correspondence to Plaintiff simply to inform Plaintiff that a debt was purchased by Defendant and was later assigned to Grassy Sprain. [Dkt. 14 at 4]. However, unlike those two cases, Defendant's correspondences to Plaintiff do not "merely inform" Plaintiff of the assignment of a debt. Defendant's correspondences address Plaintiff as an "obligor" in bold lettering, and informs Plaintiff that, "The Charge Off Balance consists of Principal, Interest and

Fees due as of the above 'Sale Date'. This transfer does not change the terms and conditions of the prior agreement." *Id.* Moreover, Defendant explicitly informs Plaintiff, "[e]ffectively immediately, please remit future payments and send correspondences to: Grassy Sprain Group, LLC[,] 25 E Grassy Sprain Rd.[,] Suite 210[,] Yonkers, NY 10710[,] (914) 337-7300[,] info@grassysprain.com". Exhibit A. These additional coercive characteristics prevalent in Defendant's correspondence render its supporting case law inapposite with the facts at hand.

Defendant asserts that it did not threaten the imposition of any fee or interest, and that it did not demand payment from Plaintiff. [Dkt. 14 at 5]. These conclusory arguments are patently false, as Defendant explicitly stated that the assignment of the subject debt did not change the terms of the original agreement, thus alluding to the possibility that interest and fees were continuing to accrue. Furthermore, Defendant's demand for payment is clearly conveyed by its instructions to demanded payment when it instructed Plaintiff to, "effective immediately," remit payment to Grassy Sprain. *See id.* Consequently, Defendant's correspondences were not exclusively sent for the purpose of merely informing Plaintiff as to the assignment of a debt. It is clear from Defendant's warnings and its instructions for Plaintiff to send payment to Grassy Sprain, that Defendant's intentions were to "at least in part to induce [the debtor] to pay[.]" *See Romea v. Heiberger & Assocs.*, 163 F.3d 111, 117 (2d Cir. 1998).

As set forth *supra,* as well as in the accompanying affidavit, Plaintiff needs further discovery to obtain facts essential to justify his opposition to Defendant's Motion. *See* Exhibit C, Affidavit of Alexander J. Taylor. Again, Defendant's Motion is premised *entirely* on the erroneous conclusion that its correspondences were not sent in connection with the collection of a debt. However, "Whether a communication was sent 'in connection with' an attempt to collect a debt is

a question of objective fact, to be proven like any other fact." *Ruth v. Triumph P'Ships,* 577 F.3d 790, 798 (7th Cir. 2009).

Accordingly, written discovery is necessary for Plaintiff to obtain relevant documents, such as Defendant's policies and procedures, in order to know how Defendant communicates with debtors who will be targeted for collection, and how Defendant distinguishes them from consumers who are merely informed that a debt was assigned.

In addition, information that Plaintiff would elicit through deposition testimony is essential to justify his opposition. Although Defendant claims that it did not attempt to collect from Plaintiff, its assertions should not be taken at face value, as Defendant sent the same letter twice, within mere weeks apart, and both letters contain forceful characteristics and language prompting Plaintiff send payment to Grassy Sprain. *See* Exhibit A; *See* Exhibit B. Defendant's deposition is crucial for establishing the motive behind Defendant sending its second identical correspondence to Plaintiff a handful of weeks after the first.  This fact inherently involves Defendant's policies and procedures, and Plaintiff must be able to depose Defendant to further inquire into the inner-workings of Defendant's collection system, and/or be able to verify any indications made in its written discovery responses about its internal procedures, as the letters are noticeably intended to induce Plaintiff into making a payment.

Given the clear relationship between Defendant and Grassy Sprain, as evidenced in Defendant's correspondence, Plaintiff will more than likely have to depose Grassy Sprain's corporate representative, as Plaintiff must ascertain the parties' motives behind sending such letters. As Defendant's actions benefit Grassy Sprain, the deposition of Grassy Sprain's corporate deposition will add important context for Defendant's actions. Thus, Grassy Sprain's deposition

will be necessary to oppose Defendant's self-serving conclusion that it did not attempt to collect from Plaintiff.

Absent these crucial fact finding tools, Defendant is able to pursue self-serving conclusions while wrongfully denying Plaintiff information he is entitled to under the Federal Rules of Civil Procedure. The deficiencies in Defendant's discovery responses have also yet to be cured by Defendant, which further demonstrates that Plaintiff requires additional time in order pursue available options to compel Defendant to comply with his discovery requests.

Defendant will likely assert that Plaintiff's request for further time to for discovery to continue is the result of dilatory behavior on the part of Plaintiff. However, Plaintiff's actions were not meant to cause any unnecessary delay, but instead reflect a considered and pragmatic approach as to how to conduct discovery in as efficient a manner as possible. As such, any perceived dilatory aspects to Plaintiff's actions in proceeding through discovery were caused by Defendant's deficient discovery responses and the time such deficiencies caused to be diverted from Plaintiff's pursuit of discovery.

Furthermore, it is important to note that discovery in this matter does not close until October 1, 2020. [Dkt. 13]. At the outset of this case, the parties clearly contemplated a timetable for discovery that allowed such time to complete depositions and discovery in this matter. However, Defendant's Motion, filed nearly 9 months before the close of discovery – in combination with other delays in the discovery process, have resulted in Plaintiff needing further discovery – conducted well within the timetable originally set out for discovery – to respond to Defendant's Motion.

Therefore, Defendant's Motion should be denied or the Court should defer considering the Motion until such time as Plaintiff can conduct the discovery outlined in this Response. The

10

attached affidavit and information provided in this Response illustrates that the specific facts sought to be gleaned from such deposition are essential to Plaintiff's claims. It is further likely that the requested deposition will elicit such essential facts. Therefore, Plaintiff has met his showing for relief under Fed. R. Civ. P. 56(d).

**III.    CONCLUSION:**

As set forth herein, Plaintiff requests, pursuant to Fed. R. Civ. P. 56(d), that Defendant's Motion be denied or that ruling of Defendant's Motion otherwise deferred so that Plaintiff may take the deposition of Defendant's corporate representative.


Dated: February 10, 2020                    Respectfully submitted,

                                            */s/ Alexander J. Taylor*
                                            Alexander J. Taylor, Esq.
                                            *Counsel for Plaintiff*
                                            Sulaiman Law Group, Ltd
                                            2500 S Highland Ave, Suite 200
                                            Lombard, IL 60148
                                            Telephone: (630) 575-8181
                                            ataylor@sulaimanlaw.com
                                            Attorney for Plaintiff, Robert Valenzuela


**CERTIFICATE OF SERVICE**

The undersigned, one of the attorneys for Plaintiff, certifies that on February 10, 2020, he caused a copy of the foregoing, **PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT AXIOM ACQUISITION VENTURES, LLC'S MOTION FOR SUMMARY JUDGMENT** to be served electronically via CM/ECF system on: all counsel of record.


                                            */s/ Alexander J. Taylor*
                                            Counsel for Plaintiff