IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ROBERT VALENZUELA,

        Plaintiff,

v().                                        CASE NO.: 8:19-cv-02181-JSM-CPT

AXIOM ACQUISITION VENTURES,
LLC

        Defendant.
_____/

### DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL

Defendant Axiom Acquisition Ventures, LLC respectfully submits this Memorandum of Law in Opposition to Plaintiff's Motion to Compel Defendant to Respond to Discovery and to Produce Documents (ECF No.24).

**I.    INTRODUCTION**

Mr. Valenzuela filed his Complaint on August 29, 2019, alleging Axiom violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, (FDCPA) in connection with a single letter Axiom sent to Mr. Valenzuela on or about July 22, 2019. *See* ECF No.1. Mr. Valenzuela argues this letter violated the FDCPA in three ways. First, he contends that it did not inform him of his right to dispute the debt as required by 15 U.S.C. § 1692g. ECF No. 1, ¶ 30 – 31. Second, he argues that it was false, deceptive, and misleading under 15 U.S.C. § 1692e because it confused and mislead him as to the origins and chain of ownership of the debt. *Id.* at ¶ 24-27. Finally, he alleges the letter constituted an unfair and unconscionable means of debt collection in violation of 15 U.S.C. § 1692f because it concealed Axiom's status as a debt collector. *Id.* at 28 – 29.

1

On October 25, 2019, Mr. Valenzuela propounded Plaintiff's First Set of Interrogatories to Defendant and Plaintiff's Requests for Production of Documents. ECF No. 24, Ex. A – C. On November 19, 2019, Axiom provided responses to Mr. Valenzuela's Interrogatories and Requests for Production. *Id.*

On January 13, 2020, Axiom filed its Motion for Summary Judgment arguing its July 22, 2019 letter was not sent "in connection with collection of any debt" and otherwise not a communication under the FDCPA. ECF No. 14. Mr. Valenzuela filed his opposition on February 10, 2020, alleging Axiom's Motion for Summary was premature and asking the Court to allow Mr. Valenzuela to take the deposition of Axiom's corporate representative(s). ECF No. 18. On March 6, 2020, the Court entered an Order denying Axiom's Motion for Summary Judgment without prejudice and, "in an abundance of caution," directing Axiom to make its corporate representative available for deposition within sixty (60) days. ECF No. 22.  The Order permits Axiom to refile its motion after sixty (60) days from the date of the Order, as "it appears the only issue raised in the summary judgment motion is a purely legal question." *Id.*

Nearly thirty (30) days later, on April 3, 2019, Mr. Valenzuela filed his Motion to Compel Defendant to Respond to Discovery and to Produce Documents. On April 9, 2020, Mr. Valenzuela unilaterally noticed Axiom's deposition for May 1, 2020 without any coordination whatsoever with Axiom or its counsel.

## II. **STANDARD OF REVIEW**

Although the appropriate scope of discovery in any given case rests in the sound discretion of the trial court, such discretion is nonetheless limited by the bounds of Fed. R. Civ. P. 26 which provides, in pertinent part, that parties may only obtain discovery as to any "nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R.

Civ. P. 26(b)(1). As Chief Justice Roberts explained in his 2015 Year-End Report, Fed. R. Civ. P. 26 provides, "…as a fundamental principle, that lawyers must size and shape their discovery requests to the requisites of a case. Specifically, the pretrial process must provide parties with efficient access to what is needed to prove a claim or defense, but eliminate unnecessary or wasteful discovery. The key here is careful and realistic assessment of actual need." *2015 Year-End Report on the Federal Judiciary,* Pg. 7 (U.S. 2015).

"The proponent of a motion to compel discovery bears the initial burden of proving that the information sought is relevant." *DeGraw v. Gualtieri*, 2019 U.S. Dist. LEXIS 183090, *3 (M.D. Fla. 2019). The permissible scope of discovery is not boundless, and the scope of permissible, relevant discovery is determined by the parties' claims and defenses *Silwa v. Bright House Networks, LLC*, 2018 U.S. Dist. LEXIS 218993, *6 (M.D. Fla. 2018) (citing *Chudasama v. Mazda Motor Corp.,* 123 F.3d 1353, 1368 n.37 (11th Cir. 1997)). Discovery must also be proportional to the needs of the case, and the proportionality analysis begins with a review of the actual claims and defenses in the case together with a consideration of how and to what degree the requested discovery bears on those claims and defenses. *Id.* at *7 (internal citation omitted). "When discovery does not relate to the actual issues in the case, then it does not meet the relevance and proportionality requirements." *Runton v. Brookdale Senior Living, Inc.*, 2018 U.S. Dist. LEXIS 31375, *17 (S.D. Fla. 2018). Proportionality and relevancy are conjoined concepts and, "[b]ecause relevance is evaluated as part of a proportionality analysis of the requested discovery, the merits of the claims are considered." *Id.* at *17 - *18.

**III.   ARGUMENT**

    A.   The Court should deny Plaintiff's Motion to Compel in its entirety based upon his failure to meaningfully meet and confer pursuant to Local Rule 3.01(g).

Local Rule 3.01(g) states, "[b]efore filing any motion in a civil case…the moving party shall confer with the opposing party in a good faith effort to resolve the issues raised by the motion…" "The purpose of the rule is to require the parties to communicate and resolve certain disputes without court intervention." *Williams v. Bank of Am. Corp.*, 2018 U.S. Dist. LEXIS 234589, *2 (M.D. Fla. 2018) (quoting *Desai v. Tire Kingdom, Inc.*, 944 F.Supp. 876, 878 (M.D. Fla. 1996)). As an initial matter, a moving party's failure to meaningfully confer or attempt to confer in good faith on the substance of the dispute prior to filing a motion to compel, alone, constitutes grounds to deny the motion to compel. *DeGraw v. Gualtieri*, 2019 U.S. Dist. LEXIS 183090, *3 (M.D. Fla. 2019) (collecting cases).

On December 13, 2019, Mr. Valenzuela's counsel sent email correspondence to the undersigned regarding the sufficiency of Axiom's responses to Mr. Valenzuela's discovery requests which Mr. Valenzuela's counsel labeled as its "request to meet and confer in order to address these discovery deficiencies." *See* Exhibit A. Specifically, Mr. Valenzuela's counsel requested Axiom supplement its responses to Interrogatories No. 14, 20, and 23 and Requests for Production Nos. 7 thorough 22. *Id.* In conclusory fashion and without individually addressing or providing any legal support for his request, Mr. Valenzuela's counsel alleged that the Axiom's responses to the foregoing discovery requests were insufficient because:

> Defendant unilaterally concludes that Plaintiff's requests are not proportional to his claims and Defendant does not provide adequate reasons to support its position. Plaintiff's discovery requests relate to Defendant's collection efforts, which are proportion to his claims under the FDCPA. Moreover, Defendant's objections on the basis that the information sought is confidential is not grounded in law or in fact. Plaintiff's discovery requests relate to information in a form letter sent to him and the process used in drafting this form letter. Moreover, although Defendant is entitled to its position that the correspondence sent to Plaintiff is not a collection letter, Defendant is not entitled to refuse to address Plaintiff's discovery requests on a legal position unilaterally assumer by Defendant. *Id.*

Subsequently, Mr. Valenzuela's counsel and the undersigned mutually agreed to defer the discovery issues pending discussion of other issues; however, when those discussions reached an impasse on January 7, 2020, Mr. Valenzuela's counsel sent an email to the undersigned renewing his request that Axiom address the alleged insufficiencies of its discovery responses. *See* Exhibit B. That same day, the undersigned responded to opposing counsel, detailing its position with respect to each individually challenged discovery request. *See* Exhibit C. On January 9, 2020, Mr. Valenzuela's counsel responded that Axiom's "responses most certainly do not satisfy our inquiry. Since we have verbally discussed these issues as well as exchanged emails, we have complied with M.D. Fla. R. 3.01(g) as well as Judge Tuite's Preferences." *See* Exhibit D.

Mr. Valenzuela's counsel's December 13, 2019 email included a request for Axiom to withdraw its objections to Requests for Production No. 10, 13, 18, 19, and 20; however, Axiom produced all responsive documents to those requests. As such, on March 10, 2020, the undersigned sent an email to opposing counsel asking him to clarify his position **and allow the parties to fulfill their "meet and confer" requirement**. *See* Exhibit E. Opposing counsel responded, "[a]s for the discovery issues, we have tread that ground. You have agreed with me several times, including prior emails, that the parties conferred. Our forthcoming Motion will include a request for fees. Have a great day." *Id.*

Plaintiff failed to comply with Local Rule 3.01(g)'s "meet and confer" requirements for three (3) reasons. First, other than summarily concluding that Axiom's discovery responses were insufficient in his December 13, 2019 email, Plaintiff never actually detailed the factual or legal basis supporting his position prior to his filing of the Motion to Compel. Plaintiff's lack of good faith in this regard is further evidenced by the fact that Plaintiff's December 13, 2019 email

included a request to withdraw objections to numerous Requests for Production to which Axiom had, in fact, produced all responsive documents. (Request for Production No. 10, 13, 18, 19, 20). Second, Plaintiff now seeks to compel a response to Interrogatory No. 21, despite the fact Plaintiff's December 13, 2019 email did not raise any issue with Axiom's response to this Interrogatory and, until the filing of his Motion to Compel, Plaintiff never claimed Axiom's response to Interrogatory No. 21 was insufficient or otherwise even discussed it with the undersigned. Finally, when the undersigned asked Mr. Valenzuela's counsel to clarify the specific requests complained of because opposing counsel's December 13, 2019 email included a request to withdraw several responses where all responsive documents were produced, opposing counsel refused.

     **B.**    *Interrogatories Nos. 14, 20, 21, and 23 all seek information that is both irrelevant and disproportionate to Plaintiff's limited claims and to Axiom's defenses.*

**Interrogatory No. 14**

In this Interrogatory, Mr. Valenzuela asks Axiom to identify *any* system, computer software, application, or other form of technology it used to generate *any* correspondence sent to Plaintiff for *any* reason. ECF No. 24, Ex. B, ¶ 14. By contrast, all of Plaintiff's claims are limited to whether a single letter violated the FDCPA. Axiom contends the letter is not a "communication" under the FDCPA. The letter's plain language is both the starting and the ending point of the analysis as to whether the letter is a "communication" under the FDCPA which, in turn, is the penultimate threshold issue of whether Plaintiff's claim can survive summary judgment.[1] In the simplest terms, the letter says what it says, and the systems, computer software,

---

[1] *Parker v. Midland Credit Mgmt.*, 874 F.Supp.2d 1353, 1358 (S.D. Fla. 2012); *South v. Midwestern Audit Servs.*, 2010 U.S. Dist. LEXIS 129471, at *13 (E.D. Michigan 2010) (citing *Thomas v. BAC Home Loans Servicing, L.P.*, 2010 U.S. Dist. LEXIS 30891, at *4 (N.D. Ind. 2010) ("the language used in the communication is important in determining whether it was sent

application, or other forms of technology used to generate it will not change whether the letter demands payment or otherwise satisfies the criteria for "communications in connection with debt collection."

The arguments Mr. Valenzuela offers in support of his Motion to Compel further exhibit the irrelevancy and disproportionality of this Interrogatory. He argues that the information sought by this Interrogatory is "..necessary for Plaintiff to become familiar with the tools used by Defendant to generate its letter(s) to consumers" and to "…learn how Defendant communicated with debtors who will be targeted for collection, and how Defendant distinguishes them from consumers who are merely informed that a debt was assigned." ECF No. 24. As such, Mr. Valenzuela does not seek relevant and proportional information to his claims and Axiom's defenses, but rather attempts to engage in unfettered discovery to learn and become familiar with the "tools" Axiom uses to generate *any* letter to *any* consumer, as well as the methods by which Defendant distinguishes between *any* consumer who is targeted for collection versus those consumers who are merely informed that the debt was assigned. Again, an analysis of the "tools" used to generate *other* letters to *other* consumers concerning other matters, as well as the methods by which Defendant distinguishes between consumers who are targeted for collection and those who are not, has no bearing whatsoever on whether Axiom's July 22, 2019 letter did not inform Mr. Valenzuela of his right to dispute the debt as required by 15 U.S.C. § 1692g, that it was false,

---

'in connection with the collection of a debt.'"); *Mabbitt v. Midwestern Audit Serv.*, 2008 U.S. Dist. LEXIS 20446, at *12 (E.D. Mich. 2008) (granting defendant's motion for summary judgment regarding whether a letter was a communication from a debt collector where the letter did not demand payment of the debt); *Browder v. Capital One, N.A.*, 2010 U.S. Dist. LEXIS 156029, at *13 (N.D. Ga. 2010) (granting defendant's motion for judgment on the pleadings where the letter did not demand payment).

deceptive, and misleading under 15 U.S.C. § 1692e, or that the letter constituted an unfair and unconscionable means of debt collection if violation of 15 U.S.C. § 1692f.

**Interrogatory No. 20**

Similarly, Interrogatory No. 20 seeks information concerning the methods and systems used by Defendant to input Plaintiff's personal information and information regarding the debt into *any* correspondence Axiom sent to Plaintiff for *any* reason. ECF No. 24, Ex. B, ¶ 20. The sole issue for determination is whether Axiom's July 22, 2019 letter violated the FDCPA by neglecting to identity Axiom as a "debt collector," neglecting to inform Mr. Valenzuela of his right to dispute the debt under § 1692g, and that the letter constituted an unfair and unconscionable means of debt collection in violation of § 1692f. The method by which Axiom inputs the information contained in the letter at issue (let alone the method by which information was inputted into *any* correspondence Axiom sent to Plaintiff for *any* reason) has nothing to do with Plaintiff's limited claims. The letter says what it says and the methodology as to how that letter was generated will not in any way affect the analysis as to whether the letter of July 22, 2019 demanded payment or was otherwise a "communication" under the FDCPA.

Mr. Valenzuela argues this information is "necessary for Plaintiff to become familiar with the methods and the tools used by Defendant to generate its letter(s) to consumers and discover the reason for Defendant's failure to comply with the FDCPA." ECF No. 24. Because Axiom intends to argue it did not attempt to collect from Plaintiff, Mr. Valenzuela claims he needs information regarding Defendant's "collection system and practices" in order to learn how Axiom communicated with consumers who *are* targeted for collection versus those who are not. *Id.* But the reason behind a defendant's "failure to comply with the FDCPA" has no bearing here: Axiom does not raise a *bona fide* error defense, and Axiom's liability—if any—turns solely on whether

the letter at issue is or is not a "communication" as defined by the statute, and nothing more. Information concerning the entirety of Axiom's "collection system and practices" relating to *other* consumers and *other* accounts does not alter the "purely legal question" as to whether Axiom's single letter was made in connection with an attempt to collect a debt.

**Interrogatory No. 21**

In this Interrogatory, Plaintiff seeks identification of *all* information Defendant includes in *any* written communication, correspondence, email, note, or other documents sent to *any* consumer for *any* purpose over an indefinite period. ECF No. 24, Ex. B ¶ 21. This Interrogatory is neither limited to the single letter at issue nor to communications directed to Plaintiff.

Mr. Valenzuela argues this unrestrained discovery into *any* information included in *any* written communication between Defendant and *any* consumer for *any* purpose over an indefinite period is necessary to "contrast" those communications with the single letter at issue to determine whether the single communication at issue was an attempt to collect a debt. But other letters are irrelevant. ECF No. 24. When determining whether a communication is made in connection with the collection of an alleged debt, courts look to the specific language of the communication itself. They do not consider other extrinsic factors. *Kinlock v. Wells Fargo Bank, N.A.*, 636 Fed. Appx. 785, 787 (11th Cir. 2016). The language of other letters sent to other consumers *does not matter*. It has no bearing whatsoever on the specific language of the communication at issue in *this* case and is not otherwise determinative of whether the single letter at issue constituted an attempt to collect a debt. Accordingly, *any* information included in *any* written communication between Defendant and *any* consumer for *any* purpose over an indefinite period is neither relevant to Plaintiff's limited claims nor to Defendant's defenses to those limited claims.

**Interrogatory No. 23.**

Interrogatory No. 23 is also unlimited in its breadth and scope as it seeks identification of *all* steps Defendant has ever undertaken to disclose its status as a debt collector to *any* consumer in *any* communication over an indefinite period. ECF No. 24, Ex. B, ¶ 23. Defendant argues that this Interrogatory is relevant and proportional because "it is specifically related to a precise allegation in Plaintiff's Complaint." ECF No. 24. But this is false. The Interrogatory plainly asks Defendant to identify its procedures for ensuring proper FDCPA disclosures are made with communication with *other* consumers regarding *other* accounts. As noted above, none of these procedures matter—either the letter is a debt collection communication that lacks required disclosures, or it is *not* a debt collection communication and the FDCPA does not apply. None of the information Plaintiff seeks is in any way relevant to the limited issue in this case, let alone proportional to his needs.

C. *Plaintiff's Requests for Production Nos. 7, 8, 9, 11, 14, 15, 16, 17, 21, and 22 all seek documents that are both irrelevant and disproportional to Plaintiff's limited claims and Axiom's defenses.*

**Request for Production Nos. 7, 11, 14, 16, and 21**

In these four Requests, Mr. Valenzuela seeks a plethora of documents related to the methods, tools, and processes by which Axiom generates correspondence. ECF No. 24, Ex. C, ¶¶ 7, 11, 14, 16, and 21. Request No. 7 seeks all documents Axiom uses to determine the layout of *any* communication it has sent to *any* consumer or entity regarding *any* matter over an indefinite period. *Id* at ¶ 7. Request No. 11 seeks the operations manuals for all systems and technology Axiom used to create any correspondence it sent to Mr. Valenzuela. *Id.* at ¶ 11. Request Nos. 14 and 16 are identical, duplicative requests seeking all documents relating the technology employed by Axiom's "collections department" to send correspondence to Mr. Valenzuela. *Id.* at ¶¶ 14 and 16. Request No. 21 seeks all documents outlining or addressing Axiom's policies and procedures

as they relate to the information it includes in *any* correspondence it sends to *any* consumer concerning *any* debt. *Id.* at ¶ 21.

In each instance, Mr. Valenzuela argues these documents are necessary for him to become familiar with the "methods and tools" used by Defendant to generate its letters to consumers and discover the reason for Axiom's failure to comply with the FDCPA. ECF No. 24. Mr. Valenzuela argues he needs this information regarding Axiom's collection system and practices in order to learn how Axiom distinguishes communications with debtors who are targeted from collection from those who are not targeted for collection. *Id.*

As has been repeated *ad nauseam*, either Axiom's letter was sent in connection with debt collection and lacked required disclosures, or the letter was not a debt collection communication and the FDCPA does not apply. As such, the "reason for Defendant's failure to comply with the FDCPA" is irrelevant to Plaintiff's claims and to Axiom's defenses. Furthermore, Mr. Valenzuela's desire to learn how Axiom distinguishes communications with debtors who are targeted for collection from those who are not will not change or alter the language of the letter at issue. In simplest terms, the letter says what it says, and no amount of additional discovery as to the methods, tools, and processes by which Axiom generated the letter at issue (let alone the language and layout of other letters sent to other consumers for other reasons) affects whether Axiom's July 22, 2019 letter complied with the FDCPA.

**<u>Request for Production Nos. 8 and 22</u>**

In Request No. 8, Plaintiff seeks the entirety of Axiom's proprietary compliance management system: he asks for all manuals, memorandum, instructions, and other documents that discuss, describe, or set forth standards, criteria, guidelines, policies, or practices relating to compliance with *any* provision of the FDCPA. ECF No. 24, Ex. C., ¶ 8. Request No. 22 is

duplicative of and encompassed within Request No. 8, as it seeks all documents outlining or addressing Axiom's policies and procedures as they related to appraising *any* consumer of his or her right under 15 U.S.C. § 1692g. *Id.* at ¶ 22.

The FDCPA is a broad statute, governing a wide range of conduct and activity, the overwhelming majority of which is not at issue in this case. Plaintiff alleges just three violations of the FDCPA: 1) Axiom's letter of July 22, 2019 did not inform Mr. Valenzuela of his right to dispute the debt as required by 15 U.S.C. § 1692g, 2) the letter was false, deceptive, and misleading under 15 U.S.C. § 1692e and, 3) the letter constituted an unfair and unconscionable means of debt collection in violation of 15 U.S.C. § 1692f. ECF No. 1. As such, the entirety of Axiom's compliance management system is wholly irrelevant. Even if these Requests were limited to the specific provisions of the FDCPA at issue, Axiom has not asserted a *bona fide* error defense that the three violations of the FDCPA alleged by Plaintiff occurred despite Axiom's maintenance of reasonable policies and procedures to avoid such an error. As such, even Axiom's policies and procedures concerning the limited provisions of the FDCPA placed at issue by Plaintiff are neither relevant nor proportional to the needs of the case.

Plaintiff argues "[t]he FDCPA is a strict liability statute. Thus, whether or not a debt collector maintains policies and procedures to comply with the law is relevant for a consumer to prosecute his rights pursuant to the FDCPA." ECF No. 24. Setting aside the fact that this statement is inaccurate, Plaintiff's position essentially boils down to his opinion that any defendant's entire compliance management system is relevant, proportional, and discoverable, in any suit, for any violation of the FDCPA. This is nonsensical. The letter says what it says; it either complies with 15 U.S.C. § 1692g or it doesn't. Axiom does not claim that any alleged violation of the FDCPA is the result of a *bona fide* error. As such, the reasons Axiom allegedly failed to comply with the

FDCPA are neither relevant to Plaintiff's claims and to Axiom's defenses nor proportional to either party's needs. This is the very type of "wasteful discovery" the 2015 amendments to Rule 26 were designed to prevent. *2015 Year-End Report on the Federal Judiciary,* Pg. 7 (U.S. 2015).

**Request for Production No. 9**

Request for Production No. 9 seeks the entirety of Axiom's data management system. ECF No. 24, Ex. C., ¶ 9. Plaintiff argues these documents are relevant because Axiom's letter created confusion as to the chain of ownership of Mr. Valenzuela's account and, consequently, Axiom's data retention policies are relevant to examine its data retention protocols f regulatory compliance purposes. But Plaintiff admits in his Complaint that "Cross River Bank sold the subject consumer debt to Defendant after Plaintiff allegedly defaulted on his payments." ECF No. 1, ¶ 9. As such, the chain of ownership of Plaintiff's account is not at issue—Plaintiff himself identifies Cross River Bank as the original creditor. Plaintiff does not allege that Axiom misplaced, lost, or destroyed any data related to Plaintiff's account. Moreover, Axiom's protocols for retaining information for regulatory compliance when a debt is either purchased by Axiom or placed with Axiom for collection is wholly irrelevant as to whether the single letter at issue constituted a demand for payment or otherwise met the criteria to constitute a communication under the FDCPA.

**Request for Production No. 15 and 17**

Request for Production No. 15 seeks all internal procedures or manuals related to *any* debt collection activity employed by Axiom concerning *any* consumer or account. ECF No. 24, Ex. C., ¶ 15. Similarly, Request for Production No. 17 seeks all document pertaining to *any* policy and procedure relating to *any* past due account for *any* consumer. *Id.* at ¶ 17.

The sole issue for determination in this case is whether Axiom violated the FDCPA because its July 22, 2019 letter did not inform Mr. Valenzuela of his right to dispute the debt as required by 15 U.S.C. § 1692g, the letter was false, deceptive, and misleading under 15 U.S.C. § 1692e and the letter constituted an unfair and unconscionable means of debt collection in violation of 15 U.S.C. § 1692f. These Requests seek all internal policies and procedures related to *any* collection activity employed by Axiom concerning *any* consumer or account all of which have no bearing whatsoever on Plaintiff's limited claims.

Plaintiff argues, "Defendant's policies and procedures on collecting upon past due accounts are clearly relevant to compare Defendant's collection practices to how it engaged Plaintiff in the instant matter." ECF No. 24. This position plainly ignores the fact that none of Axiom's policies and procedures (let alone those policies and procedures employed to collect other accounts belonging to other consumers) will not change or alter the language of the letter at issue. No amount of additional discovery, let alone policies and procedures related to *any* collection activity, will change whether the letter at issue demands payment or otherwise satisfies the criteria for a communication under the FDCPA.

## IV.    CONCLUSION

On balance, the information and documents sought by the foregoing Interrogatories and Requests for Production are neither relevant to Plaintiff's limited claims nor proportional to the parties' respective needs given the claims at issue and Axiom's defenses to those claims. Furthermore, because Plaintiff failed to fulfill his requirements under Local Rule 3.01(g), this Honorable Court should deny Plaintiff's Motion to Compel in its entirety.

WHERFORE, Defendant Axiom Acquisition Ventures, LLC respectfully requests this Honorable Court enter an Order denying Plaintiff's Motion to Compel, require Plaintiff to pay

reasonable costs and fees to Defendant associated with its defense of this Motion to Compel pursuant to Fed. R. Civ. P. 37, and grant any such further relief as the Court may deem just and proper.

Respectfully submitted,

**MESSER STRICKLER, LTD.**

By: */s/ John M. Marees*
LAUREN M. BURNETTE, ESQUIRE
FL Bar No. 0120079
JOHN M. MAREES II, ESQUIRE
FL Bar No. 0069879
12276 San Jose Blvd.
Suite 718
Jacksonville, FL 32223
(904) 527-1172
(904) 683-7353 (fax)
lburnette@messerstrickler.com
jmarees@messerstrickler.com
*Counsel for Defendant*

Dated: April 16, 2020

## CERTIFICATE OF SERVICE

I certify that on April 16, 2020, a true copy of the foregoing document was served as follows:

*Via CM/ECF*
Alexander J. Taylor, Esq.
Sulaiman Law Group, Ltd.
2500 South Highland Avenue, Suite 200
Lombard, IL 60148
ataylor@sulaimanlaw.com
*Counsel for Plaintiff*

**MESSER STRICKLER, LTD.**

By: */s/ John M. Marees*
LAUREN M. BURNETTE, ESQUIRE

        FL Bar No. 0120079
        JOHN M. MAREES II, ESQUIRE
        FL Bar No. 0069879
        12276 San Jose Blvd.
        Suite 718
        Jacksonville, FL 32223
        (904) 527-1172
        (904) 683-7353 (fax)
        lburnette@messerstrickler.com
        jmarees@messerstrickler.com
        *Counsel for Defendant*

Dated: April 16, 2020